UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL TOLBERT, III,<br><br>   Plaintiff,<br><br>  v.<br><br>CONTRA COSTA COUNTY MARTINEZ DETENTION FACILITY, et al.,<br><br>   Defendants. | Case No. 21-cv-09673 EJD (PR)<br><br>**ORDER GRANTING DEFENDANT MURPHY'S MOTION TO DISMISS**<br><br><br>(Docket No. 95) |

  Plaintiff, a California state prisoner, filed the instant pro se civil rights action pursuant to 42 U.S.C. § 1983 against officers at the Martinez Detention Facility ("MDF") in Contra Costa County where he was formerly housed as a pretrial detainee. The second amended complaint ("SAC") is the operative complaint. Dkt. No. 22. The Court found the SAC stated cognizable claims, and ordered the matter served on Defendants MDF, Sheriff David O. Livingston, Deputy John Shiffer, Deputy J. Van Kleeck, Sgt. P. Murphy, Director Sonia Sutherland, Dr. Kaji, and Nurse Jessica. Dkt. No. 24. On September 17, 2024, the Court granted in part and denied in part several Defendants' motion to dismiss. Dkt. No. 101. The remaining claims were as follows: (1) failure to protect claim against Defendants Shiffer and Murphy; and (2) inadequate medical treatment claim against Defendant Kaji and Jessica. Id. at 21.

  Defendant Murphy, who appeared much later in the action, filed a separate motion to dismiss the claim against him under Federal Rules of Civil Procedure 4(m) and 12(b)(6). Dkt. No. 96. Plaintiff filed opposition. Dkt. No. 99. Defendant filed a reply. Dkt. No. 100. For the reasons discussed below, Defendant's motion to dismiss is GRANTED.

**DISCUSSION**

I. **Motion to Dismiss**

Failure to state a claim is grounds for dismissal under Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Dismissal for failure to state a claim is a ruling on a question of law. See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).

Review is limited to the contents of the complaint, see Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. See id. at 689 (discussing Fed. R. Evid. 201(b)). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. See Symington, 51 F.3d at 1484.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…. Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." Id. at 570. "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

A pro se complaint must be liberally construed and "may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) (citations and internal quotation marks omitted).

### A.     Plaintiff's Allegations

At all times during the underlying events, Plaintiff was a pretrial detainee. Dkt. No. 22 at 1. The following is a summary of the allegations in the SAC that are relevant to the failure to protect claim against Defendant Murphy.

On September 11, 2021, Plaintiff was housed in the "T Module" at the Martinez Detention Facility ("MDF"), which was known as the "Norteno Gang Module." Dkt. No. 22 at 2, ¶ 11. Plaintiff was informed by inmates that Defendant Shiffer had told them that Plaintiff was a snitch, and that the day before, Deputy Burlison (nonparty) had spoken of the nature of Plaintiff's charges and calling him a snitch. Id. Plaintiff was questioned by several inmates of the deputies' accusations, which Plaintiff denied. Id. Plaintiff feared for his life and notified Deputy Thomas (nonparty) of the incident and filed separate grievances notifying the MDF Lieutenant and internal affairs of the threat to his life due to the rumors being spread by the deputies. Id. Sometime between September 12 and 30, 2021, inmate Mark Thomas notified Sgt. Shepard that Deputy Burlison had bribed him to stage an attack and stab Plaintiff. Id. Plaintiff spoke with various deputies and mental health clinicians at MDF that he feared for his safety from Defendant Shiffer, Deputy Burlison, and other deputies. Id. Between September 30, 2021, and October 2, 2021, Sgt. Miller advised Plaintiff that Deputy Burlison would be moved for two days and that he would advise other sergeants about Defendant Shiffer. Id.

On October 17, 2021, Plaintiff feared for his life after he was told that Defendant Shiffer was talking about his case with inmates, and that tomorrow there would be a riot during which Nortenos planned to attack him. Id. at 3, ¶ 12. Plaintiff gave a request slip to Deputy Carr (nonparty) on A Module (a Norteno module) while Defendant Shiffer was at lunch, not wanting Defendant Shiffer to read it. Id. The request included the following

3

1  message:

2  > The Nortenos are trying to run the blacks into switching rooms claiming they run the Moduel and there are specific Norte rooms they need for removal purposes of their people and to have an advantage in the event of a raid. They want majority of the rooms with a T.U. shot, if there are any rooms changes made it might cause a riot and friction on the module between the Nortes and Black.

Id.

Defendant Shiffer returned to A Module, read the message which had been left in the cabinet, then came to Plaintiff's cell door. Id. He began yelling in front of Plaintiff's cellmate and Norteno neighbors, "Why are you dropping a kite snitching on the Nortenos! What is this all about!" Id. Plaintiff replied, "I don't know what you are talking about." Id. Defendant Shiffer stated, "Yes you do you wrote this snitching on the Nortes saying it's going to be a riot tomorrow." Id. Plaintiff asked Defendant Shiffer to close his door and leave. Id. Defendant Shiffer laughed and left with the request slip in his hand. Id. Plaintiff was then questioned belligerently by his cellmate and Module workers about the situation. Id. Plaintiff believed Defendant Shiffer intentionally put his life at risk by exposing the contents of the request slip to the Nortenos and other groups. Id. Plaintiff waited until his cellmate was asleep to slip Defendant Shiffer another request slip stating the following:

> I'm really embarrassed you just busted me out please don't tell anymore inmates. And I fear for my life the things you said at my door about me snitching on Nortes I feel like they heard and my cellmate is questioning me. I need to move I think something is going to happen tomorrow I'm not putting my name cause that's proof I told please don't let anyone else see.

Id.

The next morning on October 18, 2021, at around 8 a.m., Plaintiff noticed all the Norteno inmates and black inmates huddled in groups on the top tier with hands concealed in their sweaters. Id. at 4, ¶ 14. He was told by an inmate, a "shot caller" to go to cell #35 for questioning, while several inmates waited outside the door to prevent him from running. Id. Plaintiff was allowed to leave the cell and was able to make his way to the deputy's desk where he asked Defendant Van Kleeck, "Did Shiffer tell you what's going on?" Id. Defendant Van Kleeck responded, "Yes." Plaintiff then requested to be moved "cause he is

4

extremely uncomfortable his life is in danger and something is going to happen." Id. Defendant Van Kleeck refused to make any moves and told Plaintiff to leave his desk. Id. Plaintiff walked away. Id. During the last five minutes of free time, Plaintiff was walking on the top tier when he saw inmates showing others copies of the request slip he had given to Defendant Shiffer. Id. Plaintiff was then "surrounded and blindsided, punched, swarded by kicks and knocked unconscious with a bar of soap in a sock by numerous inmates who ran in all directions." Id. Plaintiff woke up "lost and confused with extreme pain in his head and neck," and heard someone say "the police work for us snitch." Id. Plaintiff heard a Code 2 alarm after the beating. Id.

After Plaintiff regained consciousness, he was escorted by Defendant Van Kleeck to classification to speak with Deputies Zaiser and Griffin (nonparties). Id. at 5, ¶ 16. After Plaintiff was later taken to a visit room, Defendants Sgt. Murphy and Van Kleeck told Plaintiff to tell them how many requests he gave Defendant Shiffer and the location of his pink copy. Id. Plaintiff was reluctant to do so, fearing they would dispose of the "proof," but told them where to find "one of them." Id. When Plaintiff asked Defendant Murphy if he received the yellow and white copies given to Defendant Shiffer, Defendant Murphy stated, "No." Id. Plaintiff also asked Defendant Murphy if Defendant Shiffer, "called you about what he said at my door and what I wrote, why didn't you do anything?" Id. Defendant Murphy replied, "Yes he called me but didn't tell me everything. I need to see the request to know cause he told me he disposed of white and yellow copies [sic]." Id. On the way back to his cell, Plaintiff asked Defendant Murphy, "Why didn't you help me?" Id. Defendant Murphy shrugged his shoulders in response. Id. Plaintiff also told Defendant Murphy that he was hit with a bard of soap in a sock. Id. Defendant Murphy stated, "I thought you said it was a fist." Id. Plaintiff responded, "I had just gotten knocked unconscious I still feel spacious [sic] but my memory is coming back!" Id.

Plaintiff claims Defendant Murphy acted with reckless disregard to a substantial risk of harm to his safety by failing to act. Id., ¶ 27.

### B. Failure to Protect Claim

A pretrial detainee may sue prison officials for damages for injuries suffered while in custody under the Fourteenth Amendment's Due Process Clause. See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc). The inmate must show that the prison official acted with deliberate indifference. Id. at 1068. A pretrial detainee need not "prove an individual defendant's subjective intent to punish in the context of a… failure-to-protect claim." Id. at 1070. A pretrial detainee who asserts a due process claim for failure to protect instead must prove "more than negligence but less than subjective intent – something akin to reckless disregard." Id. at 1071.

Plaintiff claims that Defendant Murphy was deliberately indifferent to a substantial risk of harm and safety to his life. Dkt. No. 22 at 15. He claims that Defendant Murphy had direct knowledge from Defendant Shiffer regarding his interaction with Plaintiff, when he exposed Plaintiff as a snitch, and that Defendant Shiffer failed to handover Plaintiff's request slips to Defendant Murphy. Id. He also claims that Defendant Murphy had knowledge that an assault was imminent" and "maliciously allowed it." Id.[1]

Defendant asserts that Plaintiff's allegations fail to establish that Defendant Murphy individually violated Plaintiff's constitutional rights. Dkt. No. 96 at 7. Defendant asserts that the SAC fails to allege facts plausibly showing that Defendant Murphy had advance notice of the attack on Plaintiff by other inmates, much less that he acquiesced in it. Id. Defendant points out the SAC avers that Deputy Shiffer came to Plaintiff's cell, "yelled" at him, and accused him of snitching on other inmates. Id. Defendant asserts that this purported conduct by Defendant Shiffer has nothing to do with Defendant Murphy. Id. Furthermore, Defendant asserts that Defendant Murphy's response to Plaintiff's inquiry as to whether Defendant Shiffer had told him about their encounter was that Defendant Shiffer

---

[1] Plaintiff also alleges that Defendant Murphy "should have been adequately trained" in various ways. Dkt. No. 22 at 15. However, such a claim should be made against those who allegedly failed to do the training. But as the Court discussed in its prior order, Plaintiff's allegations were insufficient to state a claim against supervisors and the MDF for their alleged failure to adequately train their subordinates, which would presumably include Defendant Murphy. Dkt. No. 101 at 10-16.

had "called" him but "didn't tell [him] everything." Id., citing Dkt. No. 22 ¶ 15. Defendant asserts that Plaintiff presupposes that Defendant Shiffer openly revealed to Defendant Murphy that he loudly proclaimed Plaintiff was a snitch in front of hostile inmates, and that notwithstanding this knowledge, Defendant Murphy deliberately chose not to protect Plaintiff. Id. Defendant asserts that there is simply no factual support for this far-fetched theory within the SAC. Id. Rather, Defendant asserts that it is much more likely that Defendant Shiffer simply informed Defendant Murphy that he had spoken with Plaintiff and resolved all outstanding issues. Id. Furthermore, Defendant asserts that the fact Defendant Murphy asked Plaintiff *after* the attack to provide copies of the slips he submitted to Defendant Shiffer fails to establish liability as well as Defendant Murphy's other post-incident conduct, e.g., shrugging his shoulders and asking whether Plaintiff was struck with a fist or a bar of soap. Id. at 8. Defendant asserts that Plaintiff's belief that Defendant Murphy was not sufficiently sympathetic to his predicament is no basis for Defendant to be held constitutionally liable. Id.

    In opposition, Plaintiff repeats his allegations that Defendant Murphy had notice that his life was in danger and that he would be assaulted. Dkt. No. 99 at 4. Plaintiff asserts for the first time that Defendant Murphy had access to camera footage where "mass groups of inmates were huddled and concealing hands in sweaters… yet he failed to call additional deput[ies]." Id. Plaintiff also asserts that Defendant Murphy had notice of the contents of the slips "via Defendant Shiffer" and failed to act, and that he also knew that requests slips were "to go to him yet he acted with inaction in not trying to get them from his Deputy Shiffer until after Plaintiff was assaulted." Id. Plaintiff asserts Defendant Murphy's deliberate indifference is "evidenced in his failing to move Plaintiff, failing to have Defendant Shiffer move Plaintiff, failing to have Defendant Van Kleeck move Plaintiff, failing to have Defendant Shiffer follow Contra Costa Sheriffs Office Policy in forwarding Plaintiff's requests to addressed Sergeant and so on and so forth as elaborated on in ("SAC")." Id.

In reply, Defendant contends that Plaintiff's assertions are unavailing. Dkt. No. 100 at 3. First, Defendant argues that Plaintiff's assertion that Defendant Murphy had notice is an entirely conclusory representation. Id. Defendant asserts that Plaintiff's second contention that Defendant Murphy knew the contents of the slips is equally conclusory and further contradicted by the allegations in the SAC, i.e., Defendant Murphy stated that Defendant Shiffer failed to tell him "everything," he did not know how many slips Plaintiff submitted prior to the attack, and that Defendant Shiffer had "disposed" of the other copies. Id. As for Plaintiff's assertion that Defendant Murphy had access to camera footage, Defendant contends that there are no allegations showing Defendant Murphy had access to any camera footage (insofar as it existed) prior to or at the time of the alleged assault such that he could have anticipated or prevented it. Id. Defendant asserts that the SAC does not allege facts showing that Defendant Murphy feigned his lack of knowledge about Plaintiff's request slips, nor does the SAC show that Defendant lied when he told Plaintiff that Defendant Shiffer had not been forthcoming about Plaintiff's concerns. Id. Nor does the SAC allege facts showing that Defendant Murphy had any reason to believe Defendant Shiffer was withholding information or otherwise establish that Defendant had reason to believe there was a threat to Plaintiff's safety such that intervention was necessary. Id. at 4.

Taking the allegations in the SAC as true and construing them in the light most favorable to Plaintiff, the Court finds they are insufficient to state a failure to protect claim against Defendant Murphy. First, there are no allegations in the SAC that Defendant Murphy was aware of Plaintiff's fear of being exposed as a snitch during September and early October. In fact, the first time Defendant Murphy is mentioned in the SAC is in the visit room, where he asked Plaintiff about his requests slips after the assault. See supra at 5. There is no indication that Plaintiff had any direct interaction with Defendant Murphy during the relevant period before that date. Plaintiff's allegations against Defendant Murphy are based on what he assumes Defendant Shiffer told Defendant Murphy about his situation. However, the allegations indicate that Defendant Murphy did not receive the request slips from Defendant Shiffer who admitted to disposing of the white and yellow copies. See

8

supra at 5. Because he never saw the requests, Defendant Murphy asked Plaintiff for his copies. Id. Furthermore, Defendant Murphy acknowledged that while he received a call from Defendant Shiffer, he was not told "everything," which is why he asked to see Plaintiff's copies. Id. at 6. There is no allegation that Defendant Shiffer disclosed the contents of those slips to Defendant Murphy such that he was already aware of Plaintiff's concerns. Defendant Murphy's statement that he "need[ed] to see the request to *know*" indicates that he was not sure what action should have been taken without first knowing the contents of the slips, *i.e.*, "what [Defendant Shiffer] sat at [Plaintiff's] door and what [Plaintiff] wrote." Id. This is the same conclusion that can be drawn from Defendant Murphy's "shrug," which in this context indicates uncertainty rather than indifference. Lastly, Plaintiff's assertion that Defendant Murphy failed to ensure that all requests slips were turned in to him indicates nothing more than negligence, which is not sufficient to establish deliberate indifference.

For the first time, Plaintiff's alleges that Defendant Murphy "had access to camera footage." However, even if this was true, it does not establish that Defendant Murphy in fact saw the footage in time and drew the conclusion that Plaintiff was about to be attacked and yet failed to act. Without more, the allegations are insufficient to establish that Defendant Murphy acted with reckless disregard to Plaintiff's safety. Accordingly, the SAC fails to establish that Defendant Murphy's failure to act was the cause of Plaintiff's injuries. Accordingly, the SAC fails to state a failure to protect claim against Defendant Murphy.

The Court already granted Plaintiff at least one opportunity to amend, Dkt. Nos. 13, 17, and therefore has broad discretion to deny leave to amend. Wagh v. Metris Direect, Inc., 363 F.3d 821, 830 (9th Cir. 2003). Furthermore, leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. See Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994); Roberts v. Arizona Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981). Here, it would constitute an exercise in futility as Plaintiff's opposition does not indicate that he would be able to correct the deficiency of this claim

9

even if granted leave to do so. Accordingly, this claim against Defendant Murphy shall be dismissed without leave to amend.

Because the Court finds the allegations are insufficient to state a claim, it is unnecessary to consider Defendant's qualified immunity argument or dismissal under Rule 4(m).

## CONCLUSION

For the foregoing reasons, Defendant Sgt. P. Murphy's motion to dismiss is **GRANTED**. Dkt. No. 96. The failure to protect claim against Defendant Murphy is **DISMISSED with prejudice** for failure to state a claim under Rule 12(b)(6).

The Clerk shall terminate Defendant Murphy from the docket as there remains no claim against him.

This order terminates Docket No. 96.

**IT IS SO ORDERED.**

**Dated:** February 27, 2025

EDWARD J. DAVILA
United States District Judge